# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ROBERT BATES,                                          Case No. 1:22-cv-488

      Plaintiff,

                                   McFarland, J.

      vs                                        Bowman, M.J.

STEPHEN HALE, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

Consistent with local practice, this pro se prisoner civil rights case has been referred to the undersigned magistrate judge. In this Report and Recommendation ("R&R"), the undersigned recommends that Defendants' motion for summary judgment be GRANTED in part and DENIED in part, and that Plaintiff's motion for summary judgment be DENIED.

## I.     Background

Plaintiff Robert Bates, presently incarcerated at the Trumbell Correctional Institution, has four pending civil rights cases in this Court.[1] All four of those cases stem from Plaintiff's prior confinement at the Southern Ohio Correctional Facility (SOCF). In the first-filed case, No. 1:22-cv-337-DRC-KLL, the Court severed and dismissed without prejudice a number of unrelated allegations that had been improperly joined to the failure-to-protect claim that was allowed to proceed. (*Id*., Docs. 13, 48). Plaintiff then filed the above-captioned case in order to reassert the severed claims.

---

[1]*See*, *e.g*., Case Nos. 1:22-cv-337-DRC-KLL, 1:22-cv-488-MWM-SKB, 1:23-cv-00016-JPH-KLL, 1:23-cv-00017-JPH-SKB. Court records reflect additional pro se prisoner cases previously filed by a "Robert Bates" but it is unclear, based on different prisoner numbers, whether those cases were filed by the same individual.

Plaintiff's complaint here seeks to hold eight individuals liable for alleged violations of the Eighth Amendment that occurred on May 8, 2021. Plaintiff asserts claims against each Defendant in his individual and official capacity. (Doc. 4, ¶ 11). In a prior R&R adopted as the opinion of the Court, Plaintiff was permitted to proceed with claims based on two related incidents. (Docs. 5, 10). In the first, Plaintiff alleges that Corrections Officers Murray[2] and Davis[3] sprayed a bottle of urine on his bed and floor. In the second, he alleges that Defendants Kinner, Hale, Wasmer, Justice, and Wellman used excessive force against him in the infirmary while Nurse Sammons watched and failed to intervene. (Doc. 4). Following a period of discovery, both Plaintiff and Defendants filed cross-motions for summary judgment. (Docs. 34, 38).

## II.    Standard of Review and Evidence Submitted by the Parties

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). The moving party has the burden of showing an absence of evidence to support

---

[2]This Defendant's surname is spelled variously by Plaintiff as "Murray" and "Murray." Defendants' cross-motion for summary judgment confirms that the correct spelling is "Murray."

[3]Defendant Davis has not formally appeared due to a failure of service. (Doc. 12). After confirming that Davis no longer works for ODRC, the Court endeavored to serve Davis a second time at his last known residential address. (Doc. 18). However, that attempt failed due to misdirected or lost mail. (Doc. 28). Because this R&R recommends the dismissal of all claims against Davis, the undersigned finds no need to attempt to serve Defendant Davis a third time.

the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252. Where both parties have moved for summary judgment, the Rule 56 standard remains the same. Thus, in evaluating Plaintiff's pending motion, the Court will construe any factual disputes in favor of the Defendants. By contrast, in evaluating whether Defendants should prevail, the Court has drawn all reasonable inferences in Plaintiff's favor. *See Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994) (explaining that a court must evaluate each motion for summary judgment on its own merits).

Because Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). That said, a litigant's pro se status does not alter his burden of production to support his own motion for summary judgment, nor does it alter his burden supporting his factual assertions with admissible evidence when faced with a defendant's summary judgment motion. *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010)).

Rule 56(c) sets forth the procedures for supporting factual positions. Pursuant to Rule 56(c)(1), a party must support his assertion that a fact cannot be or is genuinely disputed by:

> (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* Evidence submitted in support of summary judgment need not only consist of admissible evidence, so long as the evidence could be presented in a form that would be admissible at trial. When a party has failed to properly support or address a fact as required, the court may provide an additional opportunity to support or address the fact, or may consider the fact to be undisputed. *See* Rule 56(e).

Both parties have submitted numerous evidentiary exhibits for the Court to consider. To support his verified complaint,[4] Plaintiff offers his testimony through an Affidavit, (Doc. 27), and a Declaration made under penalty of perjury. (Doc. 34, PageID 318-321). Plaintiff also has filed six handwritten statements by inmates housed near Plaintiff on May 8, 2021. Only one of those statements, the Spears Declaration, was made under penalty of perjury. (*See* Doc. 2, PageID 79-80). The other five are unsworn witness statements dated between May 2021 and December 2022.[5] (*See, e.g.*, Docs. 2, 7, and

---

[4]A verified complaint equals a declaration made under penalty of perjury as to any facts asserted based on personal knowledge that would be admissible in evidence, but not as to legal conclusions to be drawn from those facts. *Healthy Advice Networks, LLC v. Contextmedia, Inc.*, No. 1:12-cv-610-SJD, 2014 WL 5588444, at *4 (S.D. Ohio Nov. 3, 2014).

[5]All six witness statements bear the heading "Declaration" but to avoid confusion, the undersigned refers to all but the Spears Declaration as "witness statements." Additionally, the undersigned assumes the date of the Spears' Declaration - May 30, 202**0** – reflects a clerical error, and that the intended date was May 30, 202**1**.

8). In addition, Plaintiff has filed a Medical Examination Report ("MER") dated May 10, 2021, (*see* Doc. 34, PageID 322-324), grievance records that duplicate defense exhibits, and several documents that are not relevant to the pending motions. [6]

Defendants have filed: (1) a thumb drive containing 52 minutes and 56 seconds of videorecording, without audio; (2) three separate screen-shots produced from the same videorecording; (3) relevant grievance documents including institutional responses to those grievances; and (4) two declarations by records custodians that authenticate the videorecording and the grievance records. (*See* Doc. 38, Exh. 1-6 and flash drive filed on 7/17/23).

## III.    Findings of Fact[7]

This case concerns two separate incidents that occurred on the evening of May 8, 2021. The first took place at approximately 5:17 pm on May 8, 2021[8] when Defendants Murray and Davis pulled Plaintiff out of his cell to conduct a "shake down" or cell search. During their inspection the two officers found a contraband bottle of urine, presumably generated by Plaintiff. Instead of issuing a conduct report, Murray and Davis placed Plaintiff's property on his bed "and sprayed the urine on my bed and floor." (Doc. 4, PageID 91; *see also* Doc. 27, Affidavit at PageID 251; Doc. 34, Declaration at PageID 318). After returning Plaintiff to his cell, the two officers departed around 5:25 pm with the bottle visible in Murray's hand. (Doc. 27, PageID 251; *see also* Doc. 2, PageID 79).

---

[6]The irrelevant exhibits include: (1) Plaintiff's offer of compromise in this case; and (2) copies of ODRC policies.
[7]The Findings of Fact reflect facts based on the parties' exhibits. Where appropriate, the undersigned has noted any issues that remain in dispute.
[8]Plaintiff's affidavit mistakenly lists the year as 2022 but his later Declaration lists the correct year as 2021. (Doc. 34, PageID 318).

Between 6:00 and 6:15 pm Defendant Lt. Hale conducted a range check. After Plaintiff complained about the incident with Murray and Davis, Hale responded by turning to Murray and Davis and stating, "[i]s this the one you was telling me about if he get out of line call me back and we a get him back in line." (Doc. 27, PageID 251; Doc. 34, PageID 318-319). Plaintiff states that after he told Hale he was having chest pains, Hale stated: "You better lay down or you be in a world of hurt." (Doc. 27, PageID 251; Doc. 34, PageID 319). Hale then left the range.

At approximately 6:30 pm, Hale returned with Defendants Kinner, Wasmer, Justice, and Wellman and instructed Plaintiff to "cuff up." All five Defendants transported Plaintiff to the infirmary,[9] where he was examined by Nurse Sammons. An EKG was performed but no treatment was required. Through the end of Plaintiff's medical examination, Defendants' words and actions are undisputed. However, the parties' cross-motions for summary judgment rely on divergent accounts about what happened next.

Plaintiff avers that Hale stated: "Since you made me do all this extra work and ain't nothing wrong with you we gone [sic] have some fun." (Doc. 27, PageID 252; Doc. 34, PageID 319). Plaintiff states that Hale then punched him in the mouth and that the four other Defendants beat him in the head, back, and face, while Nurse Sammons watched. (*Id.*) As a result of the Defendants' unreported use of force, Plaintiff attests that he suffered a chipped tooth, split lip, swelling to the left side of his face, and abrasions under his eye. (Doc. 27, PageID 252; Doc. 34, PageID 319).

The record contains a Health Services Request ("HSR") completed by Plaintiff on May 8, 2021, complaining of injuries from the alleged use of force earlier that evening.

---

[9]Defendants do not dispute this fact but it is not clear from the video record that all five officers were present. Based on the limitations of camera angles, it is possible that one or more Defendants is not pictured.

(Doc. 38-3, PageID 453). Plaintiff also completed an Informal Complaint Resolution form ("ICR") that he sent to Linnea Mahlman, Inspector of Institutional Services. The ICR, also dated May 8, complains that Plaintiff reported the urine incident to Lt. Hale when he was conducting a range check, and that Lt. Hale responded inappropriately:

> Lt. Hale turned and asked C/O Davis & Murry "is this the one yu told me about if he get out of line call me back and we[']ll get him in line" Lt. Hale stated if I dnt lay down & he have to come back I would be in a world of hurt. Violating Ethics 31-SEM-01 Ethics 31-SEM-02 and ARS120-05-09 I fear for my life and safty

(Doc. 38-3, PageID 434 (punctuation and spelling original)). In her handwritten response to the ICR, Mahlman acknowledges that Plaintiff complained about "5-8-21 Alleged Unreported Use of Force in Medical." (*Id*.) Her response states that Plaintiff was re-checked by medical on the date she received the ICR (May 10), which was the same date that she sent Plaintiff a NOG form. (*Id*.)

The May 10 MER reflects that Plaintiff was examined by Nurse Practitioner David Conley at 7:17 am, approximately 36 hours after his previous infirmary visit on May 8. (Doc. 38-3, PageID 438-440). At the time, Plaintiff's complaints were noted to be headache, left side of face edema, chipped tooth, busted upper lip and back soreness, all of which symptoms Plaintiff attributed to Defendants' use of force. (Doc. 38-3, PageID 438). The typed MER was electronically signed four hours later at 11:18 am. (*Id*., PageID 440). A second handwritten MER dated May 10, 2021 was signed at 10:20 am by "A. Buckle, RN." (Doc. 38-3, PageID 452). The second MER lists the same subjective complaints from the alleged use of force, including that Plaintiff's tooth had been chipped and that his lower back was sore "where the C/O's jumped on him," and that he "wants to file a complaint." (*Id*.; *see also* Doc. 38-3, PageID 452). Objective findings list slight

bruising to Plaintiff's upper lip, discoloration to Plaintiff's left eye and side of face with slight discoloration and edema noted, and a small chip on his upper #8 central incisor that was new since a prior dental visit on April 21, 2021. (*See* Doc. 38-3, PageID 452; *compare with id*., PageID 441-442 (exam report that tooth #8 was "unmodified")).

In addition to her written response to Plaintiff's ICR on May 10, Mahlman generated an "Incident Report" on an institutional Form DRC 1000 at 11:00 am that same day. The Incident Report states:

> Be advised while opening the mail for my office [on 5/10/21] a [sic] received 2 Informal Complaints written by Inmate Bates… alleging that he was assaulted by staff on 5-8-21 in medical by Lt. Hale and also alleges the officers in the block squirted urine all over his cell when they searched it and this also occurred on 5-8-21.
>
> Be advised I contacted Captain Clark and had the DVR saved of the inmate walking to and from the infirmary and I had the inmate checked by medical and an MER was completed along with this DVR1000 and Inmate Bates was sent a Grievance [NOG] to file on this matter….

(38-3, PageID 444; *see also* Doc. 38-3, PageID 434).[10]

In response to Plaintiff's NOG grievance appeal, Mahlman generated an investigative report. A Report to Managing Officer (Warden Erdos) dated June 10, 2021 provides the basis for the denial of Plaintiff's appeal. Mahlman reports that she interviewed Plaintiff and had him examined by medical, and interviewed Defendants Sammons, Lt. Hale, Officer Wellman, Wasmer, Justice and Kinner. Her Report states that all Defendants[11] reported that "no force was used or witnessed," (Doc. 38-3, PageID 454), and includes the following findings:

---

[10]Only one Informal Complaint form appears of record. It is possible that the second of the "2 Informal Complaints" to which Mahlman refers is a reference to the May 8 HSR.

[11]The grievance record contains signed and dated unsworn witness statements from four Defendants. Two Defendants, Justice and Wasmer, did not sign written statements.

> DVR clearly shows inmate leaving medical with no injuries to his face
> because he had a white face mask on and there was no blood on it or him
> as he looked at the camera walking out of medical on 5-8-21.TWO days
> later the inmate signed up for NSC alleging chipped tooth and face swelling
> along with a black eye. Inmate could have reported to medical walking his
> range but failed to do so.

(Doc. 38-3, PageID 454, emphasis original).[12] Under "Actions or Conclusions and Recommendations" Mahlman wrote:

> Inmate called his sister on the phone prior to complaining chest pain telling
> her he was going to be beat up in medical and Shanika called my office
> threatening to sue me if he was not transferred. There is no evidence that
> staff violated AR5120-9-03 and failed to report it and inmate Banks is
> attempting to manipulate a transfer from SOCF. No recommendations at
> this time.

(*Id*.) Based on Mahlman's Report, Warden Erdos denied the NOG appeal on June 11, 2021. (*Id*., PageID 455).

Plaintiff further appealed to the Chief Inspector, complaining that Mahlman was "intentionally and deliberately denying my grievance to protect the officers involved…." (Doc. 38-3, PageID 456). The Chief Inspector affirmed the denial of Plaintiff's step three appeal on July 9, 2021. (Doc. 38-3, PageID 457).

Plaintiff was housed in restrictive housing from May 8 through May 10, and did not leave his cell to attend recreation or for any other reason besides going to the shower and two visits to the infirmary on the evening of May 8 and the morning of May 10. (Doc. 34, PageID 319). In addition to Plaintiff's Affidavit and Declaration, the Spears Declaration

---

[12]The report's conclusion that Plaintiff waited two days to report his injuries contradicts Mahlman's statement that on May 10, her office received two informal complaints dated May 8. Plaintiff's ICR and Health Services Request are both dated May 8. Plaintiff hypothesizes that Defendant Sammons, who should have received the HSR when it was submitted on May 8, elected to wait until 7:30 pm on May 10 to scan it into Plaintiff's medical file "in hopes that Plaintiff's injuries and swell[ing] to his face would go down then falsify Plaintiff's Medical Records in an attempt to keep Defendants….out of trouble, and cover this incident up." (Doc. 41, PageID 504). But the record includes two separate MERs that reflect that Plaintiff was examined early in the morning of May 10, 2021.

and five other witness statements generally corroborate Plaintiff's account. The Spears Declaration and witness statement indicate that Plaintiff did not have any visible injuries prior to going to the infirmary on the evening of May 8, but reported to several inmates on his return to his cell that he had been beaten in the infirmary, and was observed by other inmates that evening and/or the next day to have facial swelling and a black eye. (*See*, *e.g.*, Doc. 2, PageID 79-81; Doc. 7 at PageID 126-128; Doc. 8, PageID 131-132).

## IV.    Analysis of Plaintiff's Distinct Claims

All of Plaintiff's claims arise under the Eighth Amendment, which prohibits "cruel and unusual punishments." However, the first incident did not involve any physical contact between Murray and Davis and Plaintiff. Spilling a bottle of urine in a cell, outside of the presence of an inmate is not a use of force. Therefore, the urine incident is understood to be a "conditions of confinement" claim. The second incident in the infirmary, by contrast, involves the alleged excessive use of force by five Defendants, and allegations that Defendant Sammons failed to protect Plaintiff from the unlawful force.

Both the conditions-of-confinement claim and the excessive force claims require Plaintiff to establish objective and subjective components, *see Hudson v. McMillion*, 503 U.S. 1, 112 S. Ct. 995, 117 (1992), but require distinct contextual analysis. For the reasons explained below, Defendants Murray and Davis are entitled to summary judgment on the conditions of confinement claim, but neither Defendants nor Plaintiff are entitled to summary judgment on the excessive force and failure-to-protect claims.

## A.  The Conditions of Confinement Claim – Defendants Murray and Davis

Plaintiff alleges that Defendants Murray and Davis discovered a bottle of urine during a cell search and spilled it on unidentified personal property, his bedding and his

cell floor.[13] Plaintiff's allegations are supported by his testimony, the Spears Declaration, other witness statements and his May 8 informal grievance. Defendants have offered no evidence that contradicts Plaintiff's account of this incident. Despite failing to dispute any material facts, Defendants argue that Murray and Davis are entitled for summary judgment both on the merits, and based on Plaintiff's failure to exhaust his administrative remedies. I agree.

### 1. The Objective Component of Plaintiff's Claim

Defendants first argue that Plaintiff cannot prove the objective component of his claim because there is no evidence of excessive exposure to unsanitary conditions, nor evidence of resultant physical harm that was objectively serious. "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 101 S.Ct. 2392, 2400, 452 U.S. 337, 349 (1981). Constitutional standards require prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care..." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "extreme deprivations are required to make out a conditions-of-confinement claim ... [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 Fed. Appx. 448,

---

[13]On initial screening, the Court dismissed any claim related to the destruction of Plaintiff's personal property. (See Docs. 5, 10).

455-56 (6th Cir. 2011) (quoting *Rhodes*, 452 U.S. at 348). Thus, "only those deprivations denying 'the minimal civilized measure of life's necessities'… are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 111 S.Ct. 2321, 2324, 501 U.S. 294, 298 (1991) (quoting *Rhodes, supra* at 347).

Here, as utterly distasteful and unprofessional as Defendants' actions appear to have been, the temporary spill of urine on Plaintiff's bed and/or floor did not create an "objectively, sufficiently serious" condition that resulted "in the denial of 'the minimal civilized measure of life's necessities,'" *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Rhodes, supra*, 452 U.S. at 347 (additional internal quotation marks and citations omitted)). The condition created by the Defendants' alleged conduct was simply too insubstantial to constitute a "substantial risk of serious harm," meaning an "objectively intolerable risk of harm." *Id.*, 511 U.S. at 842, 846, and n. 9.

> It is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme. Otherwise, every poorly sanitized or malfunctioning toilet would be cause for constitutional concern.

*Edge v. Mahlman*, No. 1:20-cv-892-TSB-SKB, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021), R&R adopted at 2022 WL 20113138 (S.D. Ohio March 18, 2022).

In a 2018 case, the undersigned summarized the case law in this frequently litigated area, explaining that the objective component focuses on the "severity" of the condition (meaning the risk to health and human safety) as well as the length of time that the unsanitary condition persisted.[14] *See Still v. Davis*, No. 1:16-cv-640- SJD-SKB, 2018

---

[14]Defendants' subjective intent in spilling the urine is not relevant to this objective inquiry.

WL 1202827 (S.D. Ohio March 8, 2018), R&R adopted at 2018 WL 2943227 (S.D. Ohio

June 12, 2018).

> Conditions-of-confinement cases are highly fact-specific. "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (internal citation omitted). Claims alleging unsanitary conditions due to clogged toilets and leaky plumbing are relatively common....

> Colloquially speaking, the "yuck" factor influences the assessment of the severity of the deprivation to sanitation and level of risk to health and safety. Thus, cases involving excrement or feces, or raw sewage from toilet overflows, tend to evoke greater concern than cases …involving leaky pipes that result in a lesser degree of non-potable or contaminated water. In assessing the risk of serious harm, courts take a common sense approach. A condition that might not offend the Eighth Amendment over a shorter period of time could violate the Eighth Amendment if the inmate was subjected to the condition over a long period.

> …[But] courts have held that even fairly long exposure will not satisfy the objective component of the Eighth Amendment in the absence of any physical harm.

*Stills*, 2018 WL 1202827, at *5 (collecting and discussing cases involving exposure to raw

sewage).

Here, Defendants allegedly created an unsanitary condition by spilling an

unspecified amount of Plaintiff's bottled urine on his bed and/or cell floor. But Plaintiff

does not allege that he suffered any injury, nor does he allege the duration that the

condition existed. Notably, he does not allege that he came into physical contact with the

urine, or that Defendants denied him cleaning supplies or fresh bedding for any period of

time (assuming he made such a request). No matter how unpleasant, such a condition

does not satisfy the objective component of a conditions-of-confinement claim. *See Moore*

*v. Goulet*, 2023 WL 6050393, at *4-5 (W.D. Mich., 2023) (collecting cases within the Sixth

Circuit holding that, absent physical injury, exposure to raw sewage fails to satisfy the objective component of an Eighth Amendment claim); *accord Wallace v. Coffee Cnty., Tenn.*, No. 4:18-cv-25, 2020 WL 2946064, at *10 (E.D. Tenn. June 3, 2020) (granting defendant's motion for summary judgment based on the absence of physical injury where plaintiff alleged, "at most, that he was left in an unsanitary cell for a few days").

### 2. The Subjective Component of Plaintiff's Claim

Based on Plaintiff's inability to prove the objective element of his claim, Defendants Murray and Davis are entitled to summary judgment. But Defendants further argue that they are also entitled to summary judgment based on Plaintiff's failure to establish the subjective component of an Eighth Amendment claim. The undersigned agrees, albeit for different reasons than Defendants suggest.

Defendants point out that Plaintiff does not allege specific action by Davis beyond being present. While Murray's involvement is implied because he was carrying the bottle, Defendants suggest that "Murray *could have accidentally spilled Plaintiff's urine* on his bed while removing said contraband." (Doc. 37, PageID 341) (emphasis added). But, in considering whether Plaintiff is entitled to summary judgment, this Court must construe facts in Defendants' favor only when there is some genuine dispute of material fact. Here, Defendants' argument as to Murray's subjective intention is entirely speculative, whereas Plaintiff's evidence is undisputed. Still, whether the urine was spilled accidentally or on purpose ultimately is immaterial. What is material is Defendants' knowledge of the resultant condition of the cell, which Murray and Davis do not deny.

Defendants' knowledge of the spilled urine leads to the more relevant inquiry concerning their subjective intent, and ultimately, to a recommendation that judgment be

entered in their favor on the conditions-of-confinement claim. In order to prove his claim, Plaintiff must show that Murray and Davis subjectively acted with deliberate indifference to a substantial risk of serious harm. Deliberate indifference requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Therefore, Plaintiff must show that each Defendant subjectively perceived facts from which he inferred a substantial risk existed to Plaintiff of serious harm from the spilled urine, actually drew that inference, and then disregarded the risk. *See Richmond*, 450 Fed. Appx. at 455 (citing *Farmer*, 511 U.S. at 834).

Both Defendants undoubtedly appreciated that the odor emanating from the spilled urine, together with the risk of some brief physical contact, would be offensive. But it defies reason to suggest that either Defendant appreciated or should have appreciated "a substantial risk of serious harm" that could arise from Plaintiff's brief proximity to his spilled urine. Therefore, Defendants Murray and Davis are entitled to judgment based on Plaintiff's inability to prove the subjective element of his conditions-of-confinement claim.

### 3.  The Exhaustion Defense

In addition to advocating for judgment on the merits, Defendants Murray and Davis alternatively argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to fully exhaust available institutional remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983 (2002). Such

exhaustion is "mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 211, 127 S. Ct. 910 (2007).

The Ohio Department of Rehabilitation and Correction ("ODRC") offers a three-step grievance system. Ohio Admin. Code §5120-9-31(J). The first step allows inmates to submit an informal complaint resolution form to the supervisor of the department or staff member responsible for the issue. Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification of Grievance ("NOG") form from the Inspector of Institutional Services and filing a formal grievance. Ohio Admin. Code § 5120-9-31(J)(2). If dissatisfied at step two, the inmate may proceed to step three by submitting an appeal to the Office of the Chief Inspector at ODRC. Ohio Admin. Code § 5120-9-31(J)(3). Decisions of the Chief Inspector are final, meaning that the Ohio Administrative Code provides no further means for appeal. *Id.*

Multiple courts have acknowledged that "the exhaustion affirmative defense is best raised in a motion for summary judgment ... because proof of lack of exhaustion generally requires resorting to matters outside the pleadings, such as affidavits and documentary evidence." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 830-31 (S.D. Ohio 2020) (citing *Daugherty v. K.S.P. Medical Department*, 2018 WL 1095820, at *3 (W.D. Ky. Feb. 27, 2018)). "When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455-456 (6th Cir. 2012)); *see also Blissit v. Fiquiris*, 345 F. Supp. 3d 931 (S.D. Ohio 2018) (granting summary judgment based upon inmate's failure to comply with Ohio's grievance process for

excessive force claim, discussing burden of proof).

In the case presented, Plaintiff completed step one on May 8, 2021, by filling out an ICR that complained of both incidents at issue in this case: (1) the conduct of Murray and Davis in spilling urine in his cell; and (2) the subsequent involvement by other Defendants in the alleged use of force in the infirmary. (Doc. 38-2, PageID 434). Plaintiff completed step two by filing the NOG form on May 10, 2021. On June 10, 2021, Ms. Mahlman submitted an investigative report to Warden Erdos, (Doc. 38-2, PageID 422), which report provided the basis for the denial of the NOG for insufficient evidence on June 11, 2021. (Doc. 38-3, PageID 455). Plaintiff filed his step three appeal the same day. The Chief Inspector denied that appeal on July 9, 2021. (Doc. 38-3, PageID 456-457).

Despite Plaintiff's completion of the three-step administrative grievance process, Defendants Murray and Davis point out that Plaintiff's step two and step three forms discuss <u>only</u> the excessive use of force in the infirmary. Murray and Davis were not involved in the alleged use of force incident. Thus, apart from his step-one ICR, Plaintiff did not properly exhaust his conditions-of-confinement claim against Murray and Davis.

Plaintiff does not respond to this procedural argument, which is well-taken. Even if a reviewing court were to disagree with the substantive analysis of the claim, the undersigned alternatively recommends that Defendants Murray and Davis be granted summary judgment based on Plaintiff's failure to fully exhaust.

### B. The Excessive Force Claim

To prove his excessive force claim, Plaintiff must show the same two objective and subjective components. Most cases in which a prisoner-plaintiff accuses a correctional officer of excessive force involve a disagreement about whether the amount of force

employed on a given occasion was reasonable under the circumstances. In most cases, therefore, a court is called to consider in context both the type and amount of force used, and whether any actual threat was posed by the inmate. In the prison context, the subjective component focuses on whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. at 7). The objective component focuses on whether the injury or pain was "sufficiently serious" to offend "contemporary standards of decency." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted).

Defendants argue that Plaintiff's motion must be denied and that their motion must be granted based on Plaintiff's inability to demonstrate either component of his claim. Defendants do not dispute that there was no basis for any use of force in the infirmary. Instead, Defendants maintain that Plaintiff's claim fails on both objective and subjective components because no force was used at all. Defendants describe Plaintiff's entire claim as an "uncorroborated legal conclusion" that excessive force was used. (Doc. 38, PageID 406, citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[15] They assert that "Plaintiff's own legal conclusions regarding the objective and subjective components of an excessive force cannot pass as evidence for summary judgment." (*Id.*)  Focusing on

---

[15]Defendants also quote from *Bates v. Shostak*, Case No. 1:16-cv-534 (S.D. Ohio Sept. 22, 2017), an excessive force case in which the undersigned denied summary judgment to the pro se plaintiff because he had failed to provide evidence to support the subjective element. It is not clear based on differing inmate numbers whether the plaintiff in *Shostak* is the same Plaintiff here. Regardless, *Shostak* is easily distinguishable. The fact that force was used in *Shostak* was never disputed. The cited quote was from a decision overruling the plaintiff's objections and adopting the R&R denying the plaintiff's early motion for summary judgment. Although the defendants eventually prevailed on a later-filed motion, they prevailed on issue and claim preclusion, not on the merits.

the complaint, Defendants assert: "Plaintiff's Complaint establishes no facts, just legal conclusions which, by themselves do not create a genuine issue of material fact and summary judgment [for Plaintiff] should be denied." (*Id*., PageID 406-407).

Defendants' focus on the pleading alone is inappropriate on summary judgment. Plaintiff does not rely on bare "legal conclusions" but on detailed factual allegations that he has fully supported with his Affidavit and Declaration, the Spears Declaration, and with additional handwritten witness statements. The contemporaneous grievance record and two medical examination reports documenting clearly visible new injuries consistent with an assault 36 hours after the alleged incident provide further corroborative evidence to support both components of Plaintiff's excessive force claims.

Of course, the Court also must consider the reasonable inferences and evidence that contradicts Plaintiff's claims. Defendants maintain that Plaintiff's story that he was assaulted "is blatantly contradicted by a video record." (Doc. 38, PageID 413, citing *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007)).[16] They point out that the video confirms that Plaintiff had no visible injuries on his way to the infirmary. That fact is not in dispute. But they further argue that screen shots from the video record together with the last minute of the video show that Plaintiff also left the infirmary uninjured, an assertion that Plaintiff vigorously disputes. (Doc. 38, PageID 413).

In support of their cross-motion for summary judgment, Defendants argue that Plaintiff's Eighth Amendment claims are based on a premeditated fabrication that force was used. Defendants' motion explains the argument this way:

---

[16]In his response in opposition, Plaintiff asserts that he "was never provided the chance to see the DVR footage that was submitted to the court and was denied his request to obtain the footage upon his discovery request." (Doc. 41, PageID 476). He makes the same statement in a sworn Declaration. (Doc. 41, PageID 507-508). If this R&R is adopted, this evidentiary issue will need to be remedied.

> Plaintiff's plan to falsely accuse Defendants of assault was documented by Defendant Justice and corroborated by the video evidence. … [T]he video evidence show[s] Defendant Justice and Plaintiff entering the infirmary, wheeling over to the holding cell, then wheeling away, causing Defendant Justice to wait for approximately thirteen (13) minutes with Plaintiff until he can be seen by the nurse. [See Exhibit 3, SOCF INF – 1st – B – F at 7:10:19 to 7:23:05]. Additionally, the video evidence with the accompanying screen shots illustrate that Plaintiff left the infirmary, where he alleges he was assaulted, in better condition than when he arrived (i.e. that he arrived in a wheelchair and left under his own power). [Exhibit 3; 4-6].

(Doc. 38, PageID 413).

Defendant's "false accusation" theory appears grounded in a written statement included on an Incident Report form generated during Mahlman's investigation of Plaintiff's grievance. The typed statement is attributed to Defendant Justice, insofar as it bears that Defendant's name, but the form is neither signed by Defendant nor dated. The statement reads:

> [O]nce in the infirmary Bates stated that this was all a plan to get a lawsuit and that he wasn't really having chest pains. After this statement by inmate Bates I had one of the holding cages opened to place Inmate Bates inside. Inmate Bates stated he couldn't get up from the chair, and if we touched him he would fall and make us use force on him add it to his lawsuit. Due to this statement I made the decision to keep Bates seated in the wheel chair and avoid having a potential use of force. Just after this the Nurse called him back to the E.R. to evaluate him. I then wheeled Inmate Bates into the E.R. where the nurse did evaluate him, I left and came back multiple times due to having to escort the nurses back to the infirmary. At no time did I witness or use force on inmate Bates.

(Doc. 38-3, PageID 447).

Contrary to Defendants' argument, the referenced statement and video evidence do not entitle them to summary judgment. Plaintiff alleges that the physical assault occurred after he was examined by Sammons, in an area of the infirmary where there are no video cameras. The video record contains no audio recording that would corroborate the unsigned statement that Plaintiff told C/O Justice that he was physically unable to

stand, or the alleged threat that if Justice or others "touched him" to force him to stand, Plaintiff would "fall and make us use force on him [and] add it to his lawsuit." Nor do the images depicted fully refute Plaintiff's evidence.

The undersigned has reviewed the first thirteen minutes and one second of the video, along with Exhibits 4 and 5, which Defendants represent to be screen-shots taken from the video at 7:11:55 and at 7:23:05 pm. The video and photographs depict Plaintiff in a wheelchair awaiting examination. But the referenced video and photographs do not contradict Plaintiff's allegations, because all of the referenced images precede the alleged assault.

The undersigned also has reviewed the final minute of the video recording along with the final screen-shot, Exhibit 6, that Defendants represent was taken from the video at 8:01:56 pm.[17] (*See* Doc. 38-1, PageID 419, citing Doc. 38-6). Assuming that the last minute of videorecording and the referenced screen shot reflect the time period <u>after</u> the alleged assault,[18] they remain insufficient to refute Plaintiff's account. In both the video and still photo, Plaintiff is no longer in a wheelchair but is observed walking out of the infirmary accompanied by multiple officers. But his facial area is obscured by a large white mask. Due to the mask, it is impossible to discern whether he has any injury to his mouth or tooth, and swelling to his left side arguably would be obscured. The still photo is grainy

---

[17]In opposition to Defendants' motion, Plaintiff points out that the screen-shots lack any time stamp or date. He argues that the photos were not made in the normal course of business, but instead were generated solely for the purposes of this litigation. He accuses Defendants of offering photos from other times he has been escorted to the infirmary, and/or of tampering with the video record. (Doc. 41, PageID 472; *see also id.*, PageID 503). The undersigned accepts the Declaration of Defendants' records custodian that the still photographs are authentic screen shots from the video record. That said, the images do not fully align with the represented time record of the video provided to this Court.

[18]The record on this is not definitive. The electronic health record generated by Defendant Sammons states that he examined Plaintiff at 7:35 pm, and notified ALP Cranson to seek further direction at 8:18 pm. Sammons did not sign the record indicating Plaintiff's release back to his cell until 8:31 pm. (Doc. 38-3, PageID 435-437).

and of relatively poor quality. In addition, it is not clear that the alleged bruising and swelling would have been instantly apparent, rather than developing over time. In short, unlike in *Scott v. Harris*, there is no record that definitively establishes what occurred (or did not occur) in the infirmary out of the camera's view. "Facts that are not blatantly contradicted by [the audio or video record] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn*., 634 F.3d 865, 870 (6th Cir. 2011).

The unsworn, unsigned and undated statement attributed to Defendant Justice on the Incident Report form also fails to establish that this lawsuit is the result of Plaintiff's plan to fabricate an assault. The typed statement is authenticated by a records custodian who verifies only that it is part of the "grievance records." (Doc. 38-2). Unsigned statements are of little evidentiary value. (*See* Doc. 38-3, PageID 446-447). And on summary judgment, reasonable inferences must be drawn in favor of the non-moving party. Even if a jury were to believe the unsworn witness statement, it does not directly contradict Plaintiff's sworn testimony that he was actually assaulted in the infirmary. "[I]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.'" *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010) (additional quotation marks omitted).

The undersigned must consider the record as a whole, including Plaintiff's Affidavit and Declaration, the Spears Declaration, Plaintiff's unsworn witness statements, and the May 8 ICR and Health Services Request. The undersigned has also considered Defendants' grievance records, which include both signed and unsigned witness statements, and the video record/screen-shots. Finally, the undersigned has considered

the medical records, including the May 8 record and the two MERs dated May 10.

From the referenced records, it is undisputed that Plaintiff neither complained of nor exhibited any injury on May 8, 2021 when he was first transported <u>to</u> the infirmary and examined.[19] (Doc. 38-3, PageID 435). Plaintiff was educated on "signs and symptoms of non-cardiac/atypical chest pain" with no other treatment provided, and released back to his cell. (*Id*.) Plaintiff did not leave his cell in restrictive housing between May 8 and May 10 except to go to the shower and to the infirmary. (Doc. 34, PageID 319). He complained that he had been assaulted in the infirmary in an ICR submitted on May 8 and in a medical services request made the same date. Two MERs completed on a second trip to the infirmary roughly 36 hours after the alleged assault revealed new subjective complaints and minor objective injuries including bruising, swelling, and a chipped tooth. Defendants offer no explanation for how Plaintiff's new injuries occurred, other than to hypothesize that Plaintiff was motivated to fabricate an assault so that he would be transferred to a new institution.

Evaluating Plaintiff's motion for summary judgment, the undersigned must draw reasonable inferences in Defendants' favor. Here, the typed but unsigned witness statement attributed to Defendant Justice, together with the limited video imagery that shows Plaintiff walking unassisted out of the infirmary, are sufficient to create an issue of fact and preclude the grant of summary judgment to Plaintiff on his excessive force claims.

On the other hand, Defendants' evidence falls far short of that needed to win summary judgment. Evaluating Defendants' motion requires drawing all reasonable inferences in Plaintiff's favor. On the record presented, a genuine issue of material fact

---

[19]The May 8 medical record completed by Sammons states that Plaintiff no longer had chest pains by the time he was examined.

remains as to whether Defendants in fact used force against Plaintiff in the infirmary. Because it is undisputed that no force was necessary, a genuine issue of material fact also exists as to whether the Defendants acted sadistically and maliciously if force was used. This Court cannot resolve disputed issues of material fact on summary judgment.

### C. The Failure to Protect Claim

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of others. *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021). Once again, Plaintiff is required to prove both an objective component and a subjective component to establish his claim. Plaintiff must show evidence relating to Defendant Sammons that (i) "'objectively,' he was 'incarcerated under conditions posing a substantial risk of serious harm,'" and that (ii) Sammons "acted with 'deliberate indifference' to inmate safety," meaning that Sammons "was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Id.* (quoting *Farmer*, 511 U.S. at 829, 834, and 847).

Sammons argues that Plaintiff is not entitled to summary judgment because the "only evidence in the record is Plaintiff's self-serving statement that Defendant Sammons watched as he was allegedly assaulted by the other Defendants." (Doc. 38, PageID 407). Similarly, he argues that the Court should grant summary judgment in Defendant's favor "because Plaintiff was never assaulted." (Doc. 38, PageID 414). But argument is not evidence. And the evidence in the record reveals a genuine issue of material fact on the question of whether Plaintiff was assaulted. Sammons does not deny being present at the time. Therefore, he is not entitled to summary judgment.

24

### D. Qualified Immunity

Last, Defendants argue that they are entitled to qualified immunity in their individual capacities on all of Plaintiff's Eighth Amendment claims based on the lack of evidence "that any constitutionally protected right of Plaintiff's was violated." (Doc. 38, PageID 415).[20] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986)); *see also Dorsey v. Barber,* 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson,* 555 U.S. at 231.

Qualified immunity is judged by two inquiries that may be determined in either order. First, viewing the facts in a light most favorable to the Plaintiff, the court must determine whether the plaintiff has shown that a constitutional violation has occurred. Second, the court must determine whether the claimed right was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232. In other words, the Court determines whether the plaintiff has alleged sufficient facts, and supported the allegations by

---

[20]Defendants' cross-motion also seeks qualified immunity for claims "based on Defendants['] official capacities." (Doc 38, PageID 415). Qualified immunity applies only to individual capacity claims. Plaintiff's claims for monetary damages against Defendants in their official capacities were dismissed on initial screening.

sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

If the relevant facts are undisputed, the objective reasonableness of an officer's use of force "is a pure question of law." *Dunn v. Matatal*, 549 F.3d 348, 350 (6th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8). Here, the material facts on the conditions-of-confinement claim are undisputed. As discussed above, Plaintiff has not shown that Defendants Murphy and Davis violated any clearly established constitutional right. Therefore, those two Defendants would be entitled to qualified immunity.

The same cannot be said for the remaining Defendants. The Eighth Amendment's prohibition against cruel and unusual punishments, including the excessive use of force, is clearly established. The parties agree that Plaintiff did not engage in any conduct in the prison infirmary that would have required any use of force. The critical fact of whether force was used remains in dispute. Viewing the facts in Plaintiff's favor, a reasonable jury could conclude that five Defendants violated Plaintiff's Eighth Amendment rights through the excessive use of force in the infirmary, and that Defendant Sammons violated his rights by failing to intervene.

## V. Conclusion and Recommendations

For the reasons discussed, **IT IS RECOMMENDED THAT**:

1. Plaintiff's motion for summary judgment (Doc. 34) be **DENIED**;

2. Defendants' cross-motion for summary judgment (Doc. 38) be **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:

a. The motion of Defendants Murphy and Davis for summary judgment on the conditions-of-confinement claim should be **GRANTED**;

b. The motion of all other Defendants for summary judgment on the excessive force and failure-to-intervene claims should be **DENIED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERT BATES,                                             Case No. 1:22-cv-488

      Plaintiff,

                                           McFarland, J.

      vs                                                   Bowman, M.J.

STEPHEN HALE, et al.,

      Defendants.

**NOTICE**

Under Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).